**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**CITY OF HATTIESBURG**                                                    **PLAINTIFF**

**vs.**                                           **CIVIL ACTION NO.: 2:13-cv-208KS-MTP**

**HERCULES, INC., a foreign corporation;**                        **DEFENDANTS**

**MEMORANDUM IN OPPOSITION TO BONNER ANALYTICAL TESTING**
**COMPANY'S MOTION TO QUASH SUBPOENA DUCES TECUM OR,**
**ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER**

      Plaintiff, the City of Hattiesburg (the "City"), responds to BATCO's Motion to Quash Subpoena *Duces Tecum* or, Alternatively, Motion for Protective Order as follows:

**I.**     **INTRODUCTION**

      The City served Bonner Analytical Testing Company ("BATCO") with a valid subpoena *duces tecum* in this action. Rather than object or file a timely motion to quash, BATCO attempted to make a partial production in response to the City's third-party discovery. When the City began to press BATCO for full production, BATCO belatedly filed a Motion to Quash, arguing that the information requested by the City's subpoena contained propriety trade secrets. BATCO's motion is untimely under Fed. R. Civ. P. 45(d)(3)(A), and moreover completely fails to establish that the documents requested by the City's subpoena contain trade secrets as defined by Mississippi law. Even if the requested information could be considered proprietary or confidential, the City's need for access to the requested documents greatly outweighs any potential harm to BATCO from disclosure, and the City has already volunteered to enter into a

protective order prohibiting it (or its experts or consultants) from using BATCO's proprietary information outside of this litigation. As more fully explained below, BATCO's Motion to Quash should be denied, and it should be ordered to fully respond to the City's subpoena.

## II.     FACTUAL BACKGROUND

BATCO has been employed by the defendant, Hercules Incorporated ("Hercules") to conduct chemical analysis of environmental samples since the late 1990s. Specifically, BATCO was engaged by Hercules to develop and perform laboratory analyses to detect the presence and concentration of three compounds associated with the pesticide DELNAV that was manufactured by Hercules in Hattiesburg for decades. BATCO has a method for detecting both the cis and trans isomers of dioxathion (the active ingredient of DELNAV), as well as the related compound dioxenethion. BATCO has used this methodology to assist Hercules in complying with EPA and MDEQ driven Site investigations since at least 2003, and continues to conduct those analyses on behalf of Hercules to this day. The results of those analyses are routinely submitted to state and federal environmental agencies.[1]

On October 10, 2014, the City served BATCO with a targeted subpoena pursuant to Rule 45 seeking production of documents specific to the dioxathion analyses it performs for Hercules.[2] The City's subpoena did not seek production of documents related to any other environmental sampling that BATCO has performed for Hercules. Rather, it commanded BATCO to produce specific documents in its possession, custody, or control relating to BATCO's analyses for dioxathion at and around the Hercules Site in Hattiesburg.

---

[1] A more detailed discussion of the history of the dioxathion investigation at the Site is found in the City's Response to Hercules' Motion for Partial Summary Judgment. [Doc. 78]. Rather than re-submit the voluminous exhibits attached to that Response, the City incorporates the factual assertions of that filing (and associated exhibits) by reference as if fully set out herein.

[2] *See* City's Subpoena to BATCO, attached as Exhibit A.

After a period of negotiations with counsel for both BATCO and Hercules, the City agreed to pay BATCO $1500.00 for the time and effort required to fully respond to the subpoena, plus $0.15 per page for each responsive document copied.[3] The City further agreed that counsel for Hercules could conduct a privilege review of the BATCO documents prior to their production. At some point during the week of November 17, 2014, counsel for Hercules arranged to deliver payment to BATCO and pick up two copy sets of documents.[4] On November 24, 2014 counsel for Hercules indicated that the documents were being placed in the mail, and that no documents had been withheld on privilege grounds.[5]

Around mid-day on Wednesday, November 26, 2014 (the day before Thanksgiving), counsel for the City received 8,507 pages of documents from BATCO (via Hercules' counsel). Counsel for the City immediately began reviewing the documents. However, that review quickly revealed that BATCO (1) did not produced many (if not most) of the documents specifically requested by the subpoena and (2) produced thousands of pages of materials completely irrelevant to any request contained in the subpoena. In fact, of the 8,507 pages of documents produced, 5,015 pages do not relate to dioxathion testing at all.[6] The 3,492 pages of documents that do relate to dioxathion testing are simply documents reflecting the *results* of BATCO's work. The City's subpoena requested a much broader range of documents, specifically including documents relating to the *methods* used to generate those results.

On Monday, December 1, 2014, counsel for the City sent a letter to BATCO counsel outlining the many deficiencies in its subpoena response. That letter identified each request for

---

[3] *See* Bonner Email of November 10, 2014, attached as Exhibit B.
[4] *See* Yarborough Email of November 13, 2014, attached as Exhibit C.
[5] *See* Emails of November 24, 2014, attached as Exhibit D.
[6] Instead, these documents contained analytical results from routine wastewater effluent sampling, asbestos abatement efforts, and VOC and SUOC analyses associated with standing rainwater in the Impounding Basin.

which responsive documents were not produced, as well as the vast quantity of unresponsive documents produced (and for which the City was charged $.0.15 per page in copying charges).[7] The City's attorneys engaged in additional communications with BATCO's counsel in an attempt to secure voluntary production of the requested materials and avoid Court involvement.[8]

On December 22, 2014 BATCO filed its Motion to Quash Subpoena Duces Tecum or, Alternatively, For Protective Order. BATCO gave no prior indication of its intent to file such a motion, nor did it make any effort to secure a Good Faith Certificate as required by Local Rule 37(a). The next day, December 23, 2014, counsel for the City sent a proposed protective order to counsel for BATCO in an attempt to quickly and fairly resolve the issues raised by BATCO's Motion.[9] An hour and a half later, BATCO counsel informed the City that the request for a protective order was "in addition to reasonable payment for the requested data." Specifically, BATCO demanded payment of $34,000.00 as "compensation for the requested data."[10] The City respectfully declined to make any such payment.[11]

### III. ARGUMENT

#### A. BATCO'S MOTION TO QUASH IS UNTIMELY.

The City served BATCO with the subpoena in question on October 10, 2014.[12] That subpoena plainly sought detailed information about BATCO's methods, procedures, and techniques for analyzing dioxathion in environmental samples, and commanded BATCO to comply within fifteen days. BATCO had fourteen days after the subpoena was served to file

---

[7] A copy of the City's letter of December 1, 2014 is attached to BATCO's Motion as Exhibit C. [Doc. 90-3].
[8] *See* Emails between the City and BATCO, attached as composite Exhibit E.
[9] *See* Correspondence of Dec. 23, 2014, with attached proposed protective order, attached as Exhibit F.
[10] *See* Norton Email, attached as Exhibit G.
[11] *Id.*
[12] *See* City's Subpoena to BATCO, attached as Exhibit A, at 2.

objections under Fed. R. Civ. P. 45(d)(2)(B).  BATCO filed no objections, and, instead, eventually made a partial response to the City's subpoena.  As noted above, however, its responses to most of the City's requests were inadequate, incomplete, or simply non-existent.

Rule 45(d)(3) allows a Court to modify or quash a subpoena "on timely motion." BATCO's Motion to Quash is not timely, and is due to be denied on that basis alone.  BATCO did not move to quash the City's subpoena until December 22, 2014 – seventy-three (73) days after service, fifty-nine (59) days after objections were due under Fed. R. Civ. P. 45(d)(2)(B), and fifty-eight (58) days after the deadline for compliance with the subpoena.  A motion to quash is generally considered timely only if filed within the time specified in the subpoena for compliance.[13]  BATCO's failure to timely move to quash is, in and of itself, sufficient grounds for denial.[14]

Recognizing the tardiness of its Motion, BATCO attempts to characterize the City's efforts to secure full compliance with its subpoena as a request for "additional" records.[15]  The City's email of December 8, 2014 – which was one of many communications attempting to secure access to BATCO's documents without Court intervention – did not ask for anything that was not already covered, in detail, in the City's initial subpoena.  Rather, the City's email of

---

[13]   *See* 9 MOORE'S FEDERAL PRACTICE-CIVIL § 45.50 (2006) (timeliness means within the specified compliance period, so long as that period is of reasonable duration).
[14]   *See Isenberg v. Chase Bank USA, NA,* 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009)(failure to object within the time specified by Rule 45 constitutes waiver of objections). *See also United States ex. rel. Pogue v. Diabetes Treatment Centers of Am., Inc.,* 238 F. Supp. 2d 270, 278 (D. D.C. 2002) (holding that a motion to quash made 10 months after the return date of the subpoena is untimely); *Allender v. Raytheon Aircraft Co.,* 220 F.R.D. 661, 665 (D. Kan. 2004) (return date for production subpoena had already passed so motion to quash was untimely); *Innomed Labs, LLC v. Alza Corp.,* 211 F.R.D. 237, 240 (S.D.N.Y. 2002) (stating that "it is reasonable to assume that the motion to quash should be brought before the noticed dates of the scheduled deposition."); *Merch. Antitrust Litig.,* 186 F.R.D. 344, 350 (W.D. Va. 1999) (a motion to quash filed 36 days after corporate representatives became aware of subpoena and two months after it was due is untimely); *Central States, Se. & Sw. Areas Pension Fund v. GWT 2005 Inc.,* No. 06 CV 1205, 2009 WL 3255246, at *1 (N.D. Ill. Oct. 6, 2009) (holding that a motion to quash is "timely" under Rule 45(c)(3)(A) when it is filed on or before the date of compliance).
[15]   [Doc. 91, at p. 1].

December 8, 2014 attempted to narrow and focus the universe of material sought to lessen the burden on BATCO to respond. The scope and extent of the City's subpoena was obvious from the face of the subpoena itself, and BATCO's attempt to predicate the timing of its Motion to Quash on subsequent communications with counsel for the City is unavailing. BATCO waited more than two months to raise any substantive objection to the City's subpoena, and its belated Motion to Quash is untimely.

### B. BATCO HAS NOT MADE ANY SHOWING THAT THE REQUESTED DOCUMENTS ARE TRADE SECRETS.

Pursuant to Fed. R. Civ. P. 45(d)(3)(B), a Court *may* quash or modify a subpoena that requires disclosure of "a trade secret or other confidential research, development, or other commercial information." There is no absolute privilege for trade secrets or confidential information.[16] The burden is on the moving party to establish that the information sought is a trade secret and that disclosure of the information may be harmful.[17] If the moving party meets its burden of proof, the party seeking discovery must then show that the information sought is relevant and necessary. The Court must then balance the need for the trade secrets against the claimed injury from their disclosure.[18] As explained below, BATCO has not established – and cannot establish – that information concerning its dioxathion analyses is, or ever was, a trade secret. Furthermore, even if BATCO had met its burden of proof on that issue, the City's need for the requested information greatly outweighs any possible harm to BATCO from its production. Moreover, the City has already offered to enter a protective order that would restrict use of the requested information to this case.

---

[16] *See Exxon Chem. Patents, Inc. v. Lubrizol Corp.* 131 F.R.D. 668, 671 (S.D. Tex. 1990).
[17] *Id.*; *see also Orchestrate HR, Inc. v. Trombetta*, 2014 WL 884742 (N.D. Tex. 2014).
[18] *See American Standard v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987) (noting that, upon a showing that the subpoena calls for confidential or proprietary information, the burden shifts to requesting party to show the information sought is relevant and necessary to claims).

### 1. BATCO's dioxathion methods are not trade secrets.

BATCO has done nothing to meet its burden to show that its dioxathion testing methods are proprietary trade secrets. As this Court is sitting in diversity, Mississippi law supplies the relevant law concerning what is – and what is not – a trade secret. The Mississippi Uniform Trade Secrets Act defines "trade secret" as:

> information, including a formula, pattern, compilation, program, device, method, technique or process, that:
>
> (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[19]

While the information sought from BATCO plainly includes methods, techniques, or processes, it does not satisfy any other portion of the definition of "trade secret" under Mississippi law.

To qualify as a trade secret, there must be some economic benefit derived from keeping the information out of the general marketplace. The dioxathion analytical methods at issue here are so arcane as to be of only extremely limited commercial value. The Hercules plant in Hattiesburg is the only place in the United States where dioxathion was manufactured. Moreover, DELNAV, the Hercules pesticide that contained dioxathion isomers as its active ingredients, has not been manufactured for sale or use in the United States since 1987.[20] Therefore, the demand for dioxathion analysis is extremely limited and localized: it simply is not a compound that anyone currently needs to look for outside of Hattiesburg. BATCO derives no commercial benefit from keeping its methods secret, because there is no general market for this analysis.

---

[19] Miss. Code Ann. § 75-26-3(d).
[20] *See* Hercules 30(b)(6) testimony of Charlie Jordan, attached as Exhibit H, at 96:6-96:8.

BATCO is already employed by Hercules to conduct dioxathion analyses in Hattiesburg. The City will need to designate a laboratory representative as an expert witness in this case, and needs to be able to employ its own lab (as does Hercules). BATCO will suffer no financial harm if the City is able to employ another lab to conduct its analyses: in fact, precisely the opposite is likely true.[21] Hercules is almost certain to independently test at least some plaintiff properties in both this case and the related *Abner* case.[22] Such testing will result in *increased* business for BATCO – business that would not otherwise exist. In other words, if the City is able to employ another lab to test for dioxathion, then BATCO stands to gain business, not lose it, because Hercules' need for dioxathion analyses will increase.[23] Because the need for dioxathion analysis is inherently limited to Hattiesburg, BATCO cannot prove that it derives any economic benefit by keeping its analytical methods secret. This simply is not a methodology that has intrinsic value in the wider marketplace.

Nor can BATCO prove that its dioxathion analysis meets the second prong of Mississippi's trade secret definition. BATCO did not develop this method in secret, and never had any expectation that it would be a secret. Rather, under the direction of the Mississippi Department of Environmental Quality (MDEQ), BATCO worked hand in hand with the Mississippi State Chemical Laboratory (MSCL) to develop valid, accurate procedures for detecting that chemical (and its associated isomers and breakdown products). Publically available records demonstrate that no "reasonable efforts" were made to maintain the secrecy of the dioxathion analytical methods being used by Hercules: that method was developed in

---

[21]    BATCO bears the burden of proving such harm will occur, and has submitted no evidence on that point.
[22]    *Abner, et al. v. Hercules, Inc., et al*, Civil Action No.: 2:14-cv-63-KS-MPT.
[23]    Currently, BATCO is engaged to perform only a limited number of dioxathion analyses once per year. That engagement is part of Hercules' agreement with MDEQ to perform monitoring at the Site, and will not change as a result of this litigation.

conjunction with another public lab and environmental agencies.[24]  Indeed, it is only through happenstance and the passage of time that BATCO remains the only entity with knowledge about the procedures and methods needed to sample for dioxathion.  The City's consultants have engaged in communications with the Mississippi State Chemical Laboratory in attempts to gain access to the dioxathion testing methods that have been used by Hercules since the early 2000s.[25]  While the MSCL was, at one time, able to conduct that analysis without any additional help from BATCO, the employees involved in developing and running that analysis are either long retired or deceased.  Moreover, the MSCL no longer possesses the specific equipment needed to test for dioxathion, and no one currently associated with that laboratory has any experience with the dioxathion method it helped develop over a decade ago.   BATCO is the last lab capable of sampling for dioxathion, but not through any efforts of its own.

BATCO bears the burden of proving that the requested information qualifies as a trade secret under Mississippi law.  It has not done so, and cannot do so.

### C. THE CITY'S NEED FOR THE REQUESTED INFORMATION GREATLY OUTWEIGHS ANY THEORETICAL HARM BATCO MIGHT SUFFER FROM PRODUCTION.

Even if BATCO's dioxathion methodologies qualified as trade secrets –which they do not – the City's critical need for access to those methods greatly outweighs any minimal benefit that BATCO might gain by keeping them secret. The testing BATCO has performed for Hercules provides direct evidence that dioxathion – a man-made toxin intended to kill living creatures - has migrated far and wide into the creeks, ditches, and neighborhoods surrounding the Site.  It has been detected in soils and sediments in unexpected locations, including remote corners of the Site that never processed or stored dioxathion.  It has been detected in off-site creek sediments

---

[24]  *See, e.g.,* http://www.deq.state.ms.us/mdeq.nsf/pdf/CE_VOLUME1_D/$File/VOLUME%201D.PDF?OpenElement
[25]  *See* Affidavit of Ashli Brown, attached as Exhibit I.

located *upstream* from the plant. Sampling for dioxathion will be a central component of the City's investigation in this case: not only is dioxathion an extremely hazardous toxin in and of itself, its unique association with Hercules' operations may serve as a tracer for contaminant transport pathways and evidence of causation for other toxic compounds released from the Site.

The information sought from BATCO – even if somehow deemed confidential and proprietary – is plainly "relevant and necessary" to the City's case against Hercules.[26] Dioxathion contamination is directly relevant to the City's claims that Hercules' operations have polluted property surrounding the Site and may pose an imminent and substantial endangerment to human health or the environment. More to the point, the requested information is *absolutely necessary* in order for the City to fully investigate and prosecute this action. As noted in the Affidavit of Michael Bonner submitted in support of BATCO's Motion, BATCO has a specific method for "the analysis of the three Dioxathion compounds found in DELNAV" involving the extraction processes (for both soil and water), the "concentration procedure," and the analytical method.[27] Even EPA did not have a valid dioxathion analysis method until BATCO developed its standard operating procedure 088.1.[28] The City has engaged outside labs in attempts to replicate BATCO's ability to detect all three dioxathion compounds at the low levels reported by BATCO, but those efforts have proven unsuccessful.[29] The City is currently poised to begin environmental sampling in areas suspected to be impacted by the Hercules Site, but it cannot start that process until it is able to conduct valid dioxathion analyses. The City has a critical

---

[26] *See American Standard*, 828 F.2d at 741 (noting that, upon showing that subpoena calls for confidential or proprietary information, burden shifts to requesting party to show the information sought is relevant and necessary to claims).
[27] [Doc. 90-5].
[28] *Id*.
[29] *See* Affidavit of Ashli Brown, attached as Exhibit I.

need for immediate production of BATCO's dioxathion files in order to comply with the discovery and expert disclosure deadlines contained in this Court's Scheduling Order.

The City's case involves significant matters of public importance, as evidenced by the ongoing EPA-mandated investigation at the Site. BATCO must not be allowed to hamstring the City's ability to fully investigate the contamination associated with the Hercules Site based on vague and unsupported assertions of financial harm. To the extent disclosure of BATCO's dioxathion procedures would have any theoretical negative impact on BATCO's business interests, those impacts are greatly outweighed by the City's need for the requested information.

### D. THE CITY HAS OFFERED TO ENTER A PROTECTIVE ORDER THAT WOULD ALLEVIATE ANY HARM TO BATCO ASSOCIATED WITH PRODUCTION OF ITS DIOXATHION METHODS.

Finally, any potential harm to BATCO associated with production of documents and information concerning its dioxathion analytical procedures can be easily alleviated by entry of a protective order. In fact, immediately upon receiving BATCO's Motion to Quash, counsel for the City sent BATCO a proposed protective order designed to maintain BATCO's status as the only lab offering dioxathion analytical services to the general public. That proposed order would allow BATCO to designate any documents produced pursuant to the City's subpoena as "Proprietary / Confidential." Any material so designated would be subject to the terms of the order, which impose strict limitations on the use of such material.[30] Specifically, the order would limit any use of such material to this litigation (including the related *Abner* case), and command return of all such information at the conclusion of these lawsuits. Moreover, the City's proposed order includes provisions extending those protections to any experts or consultants employed by the City in this case. To gain access to "Proprietary / Confidential" information (which would

---

[30] A copy of the City's proposed protective order is included in Exhibit F.

include any deposition transcripts discussing such information), the City's experts or consultants would have to sign a declaration subjecting themselves to the provisions of the proposed order (and the jurisdiction of this Court).

Even if there were a market for BATCO's dioxathion analytical services outside of the litigation surrounding the Hercules Hattiesburg Site (and there is not), the City's proposed protective order would eliminate any risk that BATCO's allegedly proprietary methods could be used by its competitors in the general marketplace. Though the City offered its proposed order to BATCO in order to quickly and fairly resolve the "trade secret" issues raised in BATCO's Motion, BATCO promptly informed the City that it was not interested in such an order without additional monetary compensation. Instead, BATCO demanded the City pay a lump sum of $34,000.00 to gain access to its dioxathion documents. The City respectfully declined this demand.[31] Not only does BATCO's demand lack any basis in the realities of the marketplace, it would represent a financial windfall that BATCO has done nothing to earn. BATCO was paid by Hercules to develop its dioxathion testing procedures in conjunction with a government-mandated environmental investigation, and BATCO has charged Hercules $375 per analysis to conduct those tests for over a decade.[32] BATCO has already reaped financial benefits from its development of this method, and had the City not filed suit against Hercules over the contamination at and around its Site, BATCO would have had no other "buyer" for its services. Producing the documents requested by the City will not require any additional substantive work by BATCO (the Affidavit of Michael Bonner confirms that BATCO's standard operating procedure for dioxathion analyses already exists) and the City's proposed protective order will

---

[31] *See* Norton Email, attached as Exhibit G.
[32] *See* BATCO Invoice, attached as Exhibit J.

ensure that BATCO's market position as the only lab qualified to conduct dioxathion analyses is not disturbed beyond the confines of this litigation.

The City is willing to take all appropriate steps to protect BATCO from general disclosure of any allegedly proprietary or "trade secret" information. However, there is no basis for BATCO's attempt to hold the City hostage for a large monetary payment. While the City is not asking BATCO to subsidize this litigation, neither should the City's lawsuit (which seeks to protect the health and welfare of the citizens and environment of Hattiesburg) be a financial windfall for BATCO. The City has a critical need for information that only BATCO possesses, and there is no reason why that information should not be produced subject to an appropriate protective order.

## IV.     CONCLUSION

BATCO's untimely and unsupported Motion to Quash should be denied, and it should be compelled to produce all documents in its possession relating to its dioxathion analytical methods pursuant to an appropriate protective order.

Respectfully submitted this 29th day of December, 2014.

/s/ Clinton T. Speegle
Attorney for the Plaintiff

OF COUNSEL:

John M. Johnson (PHV)
*jjohnson@lightfootlaw.com*
Adam K. Peck (PHV)
*apeck@lightfootlaw.com*
William S. Cox, III (PHV)
*wcox@lightfootlaw.com*
W. Larkin Radney IV (PHV)

*lradney@lightfootlaw.com*
Clinton T. Speegle (PHV)
*cspeegle@lightfootlaw.com*
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200
(205) 581-0700
(205) 581-0799 (Facsimile)

James C. King (PHV)
*jimmy@jasperlawyers.com*
Justin L. Jones (PHV)
*justin@jasperlawyers.com*
KING, WILEY, & WILLIAMS, L.L.C.
1824 Third Avenue South
PO Box 1688
Jasper, AL 35502-1688
(205) 221-3500

Winston J. Thompson, III (MS #100157)
*wjt3law@yahoo.com*
Nichon Shannon (MS #101120)
*nichonshannon@yahoo.com*
THE COCHRAN FIRM
610 East Amite Street
Jackson, Mississippi 39201
(601) 812-1000

James K. Dukes (MS #6216)
*jdukes@jdukeslaw.com*
DUKES, DUKES, & WOOD
P.O. Box 2055
Hattiesburg, MS 39403-2055
(601) 544-5121
(601) 544-4425 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of December, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which served a copy upon registered participants.

                                    Respectfully submitted,

                                    /s/ Clinton T. Speegle
                                    Of Counsel